IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID DO,<br><br>      Plaintiff,<br><br>  v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>      Defendant. | Case No. 16-cv-05097-CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AND DENYING DEFENDANT'S MOTION FOR JUDGMENT<br><br>(Dkt. Nos. 33, 34) |

In this case, Plaintiff David Do asserts that he is entitled to long-term disability insurance benefits under the IVZ, Inc. Disability Plan pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1332(a)(1)(B) (ERISA) from Defendant Metropolitan Life Insurance Company, the claim administrator for the Plan. Plaintiff now moves for judgment pursuant to Federal Rule of Civil Procedure 52; Defendant opposes Plaintiff's motion and cross-moves for judgment. On November 28, 2017, the parties appeared for oral argument. Having considered the papers and the arguments of counsel, the Court GRANTS Plaintiff's motion and DENIES Defendant's motion.

BACKGROUND

I. Plaintiff's background

Plaintiff is a thirty-seven year old man who was employed as an Analyst—Desktop Services for IVZ, Inc. Plaintiff's duties included resolving promptly and effectively "all support calls relating to desktop software/hardware, installation, and maintenance." AR 2863. Plaintiff's position required him to

lift and carry up to seventy-five pounds on an occasional basis throughout the workday, use his hands repetitively in all planes of motion (grasping, fine manipulation, pushing/pulling), and reach occasionally above and below shoulder level. AR 2862.

II. The Plan

While Plaintiff was employed at IVZ, Inc., he was insured for long-term disability (LTD) benefits through MetLife-issued Group Insurance Policy No. 116385-1-G (the Plan). IVZ, Inc. served as the Plan Administrator and Sponsor of the Plan. AR 64. MetLife served as the Plan's claim administrator.

Under the Plan, Plaintiff is eligible for benefits if he can establish that he is disabled. The Plan defines "disabled" and "disability" as follows:

> Disabled or Disability means that, due to Sickness or as a direct result of accidental injury:
>
> - You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
> - You are unable to earn more than 80% of your Predisability Earnings for any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

AR 28.

The Plan also describes the duration of benefits:

> Your Disability benefit payments will end on the earliest of:
>
> - the end of the Maximum Benefit Period;
> - the date benefits end as specified in the section entitled LIMITED DISABILITY BENEFITS;
> - the date You are no longer Disabled;
> [. . .]
> - the date You fail to provide required Proof of continuing Disability.

AR 47.

2

The benefits period is limited to twenty-four months if the disability is due to "Neuromuscular, Musculoskeletal or Soft Tissue Disorder" (NMS) "including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles." AR 50-51. An exception to this limitation is where there is "objective evidence of . . . Radiculopathies," which is defined as a "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology." AR 50-51.

III. Plaintiff's disability

In February 2013, Plaintiff injured his neck, back and shoulders while performing his job duties, such as moving computers, monitors, servers, and other equipment. AR 2541, 2883. He stopped work and applied for and received workers' compensation and short term disability benefits. AR 230, 2883, 2549.

Plaintiff received physical therapy treatment from Dr. Donald Hammon. In March 2013, Dr. Hammon submitted an Attending Physician Statement to Defendant on Plaintiff's behalf, stating that Plaintiff suffered from disc injury and lumbar strain and sprain. AR 2380. Dr. Hammon further noted that Plaintiff reported pain of an intermittent and radicular type. AR 2380. He advised that Plaintiff could perform some job duties, would be restricted in prolonged sitting, standing, bending, and lifting, but could improve sitting and standing within twelve weeks. AR 2380-81.

On April 3, 2013 and May 24, 2013, Plaintiff received

MRIs, which showed degenerative disc disease and a number of other conditions. AR 2110-12, 2388-89.

On April 30, 2013, Dr. Edward Sun, an orthopedic surgeon, examined Plaintiff and reviewed the April 3, 2013 MRI. AR 2546. Dr. Sun concluded that Plaintiff did not "exhibit significant lumbar radiculopathy or any neurological deficit on examination." AR 2546.

IV. Defendant's grant of STD and LTD benefits

On September 12, 2013, Defendant approved Plaintiff's claim for short-term disability (STD) benefits from March 11, 2013 through September 2, 2013. The claim notes stated that Plaintiff was not able to perform essential functions of his job due to "continued cervical, thoracic and lumbar pain (level 8/10) and stiffness, markedly limited ROM, positive MRI, disc desiccation and annualr [sic] tear from L3-S1, [. . .] insufficient soft tissue mobility and strength, abnormal posture with left elevated shoulder and inability to sit for longer than 30 min. . ." AR 108, 2553.

Around the time Plaintiff's STD benefits were paid in full, Plaintiff sought LTD benefits under the Plan. AR 112, 114-17, 1718-28. Plaintiff's claim form noted that he experienced "piercing pain in lower back, extremely tense and throbbing in upper back/neck; difficult bending and lifting, can't sit/stand for long." AR 1722. On August 30, 2013, Dr. Hammon submitted his Attending Physician Statement in support of Plaintiff's claim, which diagnosed Plaintiff with "lumbar disk [sic] disease and radiculopathy," and noted that Plaintiff reported "moderate to severe lower back

4

pain and radicular type symptoms." AR 1703. Dr. Hammon further prescribed lifting a maximum of ten pounds occasionally; refraining from lifting a phone for prolonged periods; refraining from stooping or twisting; and only sitting, standing and walking for limited periods intermittently. AR 1703-04.

Plaintiff also submitted Division of Workers' Compensation physician's progress reports from Physician's Assistant (PA) Kiran Aulakh, which indicated reduced range of motion and tenderness in the neck and lumbar region. AR 1875-82. In a note dated September 16, 2013, PA Aulakh noted that Plaintiff stated that he experienced numbness in his right leg, which worsened with prolonged sitting and walking, along with numbness and tingling in his right arm. AR 2563. PA Aulakh diagnosed cervical radiculopathy, among other things. AR 2563.

Defendant sent Plaintiff to undergo an "Independent Medical Examination" (IME) on November 18, 2013 with Dr. L. Neena Madireddi through its third-party vendor, Medical Consultants Network. AR 1779-1784. Dr. Madireddi conducted a clinical examination and made a number of findings. AR 1783. Dr. Madireddi diagnosed Plaintiff with chronic cervical and lumbar strain; lumbar spondylosis; disc desiccation, annular tear L3 to S1; and possible cervical spondylosis. AR 1783. Nevertheless, Dr. Madireddi concluded that Plaintiff could work full-time in a light-capacity job according to the Dictionary of Occupational Titles, noting: "He could lift and carry at least 30 pounds

occasionally, 15 pounds frequently, and can occasionally stoop, crouch, crawl, and reach overhead. There are no restrictions on pushing, pulling, handling, finger, or feeling." AR 1784.

Defendant requested a vocational review to determine if there were gainful occupations meeting Dr. Madireddi's findings on job capacity. On December 3, 2013, Defendant's vocational reviewer acknowledged that, in light of Dr. Madireddi's restrictions, there were no gainful alternative occupations that Plaintiff could perform at that time. AR 230. Accordingly, on December 6, 2013, Defendant approved LTD benefits for Plaintiff effective September 7, 2013. AR 1794-97. The letter approving LTD benefits informed Plaintiff that, under the plan, for a disability due to a "Neuromuscular, Musculoskeletal or Soft Tissue Disorder," or a "disease or disorder of the spine or extremities and their surrounding soft tissue, including sprains and strains of joints and adjacent muscles," his maximum benefit duration would be twenty-four months, unless he could show objective evidence of a number of exceptions, such as "Radiculopathies." AR 1794-95. Because Plaintiff's disability fell into the NMS limitation, the maximum benefit period would end on September 6, 2015. AR 1794-95. The letter advised Plaintiff that "benefits may continue after September 6, 2015 if [he] continue[d] to satisfy the definition of Disability due to other non-limited medical condition(s) and other plan requirements." AR 1795. But the letter did not explain what evidence would be required

1 to make this showing.

A. Ongoing review of Plaintiff's LTD benefits claim

Plaintiff submitted additional information to show continued disability and that he was not subject to the twenty-four month limitation applicable to NMS.

Plaintiff provided nerve conduction velocity (NCV) and electromyography (EMG) studies of his extremities conducted by Dr. Scott Standage on November 23, 2013, which showed results consistent with right-sided lumbar radiculopathy. AR 1884, 1891.

Plaintiff also provided PA Aulakh's office notes dated February 26, 2014, February 12, 2014, January 10, 2014, and December 10, 2014, in which he noted Plaintiff experienced decreased range of motion of the cervical spine and lumbar spine. AR 1875-81. PA Aulakh diagnosed Plaintiff with cervical radiculopathy and lumbar radiculitis. AR 1875-81.

Plaintiff also provided a February 6, 2014 orthopedic permanent disability evaluation report that was written by Dr. Joel Renbaum as part of the workers' compensation proceedings. AR 2162-69. Dr. Renbaum conducted a physical examination on January 21, 2014. AR 2165-66. Dr. Renbaum stated that Plaintiff had multilevel degenerative disc disease of the lumbar spine "with radicular pain" and had multilevel degenerative disc disease of the cervical spine with canal stenosis. AR 2887. He concluded that Plaintiff was incapable of performing his customary work activities based on the bending, reaching, crawling, and lifting requirements of his job, and stated that he was permanent

7

and stationary. AR 2888.

On February 26, 2014, Dr. Teresita Degamo, an internist who was Plaintiff's treating provider, faxed Defendant records to support Plaintiff's continued disability, including: an attending physician form, which indicated Plaintiff had neck and back pain with radicular symptoms; Dr. Standage's November 23, 2013 report following an EMG; and office notes dated February 26, 2014, February 12, 2014, January 10, 2014, and December 10, 2014, with clinical findings and diagnoses of cervical radiculopathy and lumbar radiculitis. AR 1867-1881.

Defendant submitted the foregoing information to Dr. Madireddi for an Addendum. Without providing any additional analysis, Dr. Madireddi stood by her original finding that Plaintiff could perform full-time, light capacity work. AR 1898-1901.

In July 2014, Dr. Degamo provided a workers' compensation physician's progress report of a physical exam which indicated low-back pain without radiation to the lower extremities. AR 2247.

On January 16, 2015, Defendant reminded Plaintiff that he was subject to the Plan's NMS limitation and that Defendant would continue to review his claim to determine if he was subject to an exception to the limitation. AR 2017-18.

Plaintiff subsequently provided a February 13, 2015 Transfer of Care Report from Dr. Brian Mitchell. AR 2075-79. Dr. Mitchell conducted a physical exam and reviewed the

8

May 24, 2013 MRI; April 3, 2013 MRI; and November 23, 2013 EMG of bilateral lower extremities. AR 2077-78. He diagnosed Plaintiff with several conditions including cervical radiculopathy and lumbar radiculitis. AR 2078, 2080, 2083. He advised that Plaintiff was limited to four hours sitting, standing, and walking in an eight hour day and was limited to lifting up to twenty pounds a day. AR 2073.

On March 25, 2015, Defendant commissioned one of its Senior Medical Directors, Dr. Joseph Monkofsky, Jr., to provide a file review of the available medical record. AR 2138. He noted that the 2013 MRI was consistent with a right-side L5 radiculopathy. AR 2138. But he also stated, "There was no convincing clinical evidence of significant and impairing radiculopathy here despite the previous diagnostics largely due to the continuing nature of the complaints and lack of exam evidence to support." AR 2138. He also noted, "It remains unclear why updated diagnostic imaging and further diagnostics have not been done when the claimant has been out of work for so long." AR 2139. He concluded, "Some limitations still appear to be indicated despite the unimpressive clinical findings and old imaging/diagnostic studies being relied on." AR 2139.

On April 24, 2015, Defendant's vocational consultant provided an updated vocational report that concluded again that there were no alternative occupations meeting the gainful wage requirement at that time. AR 702-07.

B. Defendant's termination of benefits

Defendant reviewed all of this information and informed Plaintiff by letter dated August 25, 2015 that it had determined he would no longer be considered disabled under the Plan after September 6, 2015 because there was no showing of radiculopathy as defined by the Plan. AR 2337-39. The letter quoted from Dr. Monkofsky's paper review, stating that "[u]pdated diagnostic imaging and further diagnostics have not been done" and noting that there was a "lack of exam evidence." AR 2238.

C. Plaintiff's appeal

On appeal of his claim, Plaintiff, through counsel, provided updated medical evidence. AR 2620. He provided a February 10, 2016 Electronic Consultation by Dr. Standage, who conducted nerve conduction studies and EMGs and noted results consistent with bilateral lumbar radiculopathy. AR 899, 2625-2627. Plaintiff additionally provided a March 1, 2016 MRI showing canal and nerve passageway narrowing. AR 902. Plaintiff also provided a Transfer of Care examination report from Dr. April Mancuso Reynolds, dated March 14, 2016, following a comprehensive clinical examination. AR 2632-2639. Dr. Reynolds reported a positive straight leg test bilaterally, and a decrease in sensation in the left upper and right lower extremities, among other things. AR 2632-2639. Dr. Reynolds diagnosed Plaintiff with cervical radiculitis and bilateral lumbar radiculopathy. AR 2638.

During the appeal, Defendant sought an independent physician consultation from Dr. Malcolm McPhee, board-certified in Physical Medicine and Rehabilitation. Dr. McPhee reviewed the medical records and issued a report,

dated June 20, 2016, summarizing the medical evidence, including Dr. Reynolds's report. AR 916-18. He opined: "Radiculopathy was considered but clinical exam revealed no focal findings in a nerve root pattern." AR 920. He further noted that a "repeat electrodiagnostic study was not done." AR 920.

His report was sent to Plaintiff's counsel on June 22, 2016. In a letter dated June 23, 2016, Plaintiff's counsel responded that the reviewer had failed to consider all of the evidence included with the appeal because Plaintiff had provided updated electrodiagnostic tests and Dr. Reynolds's examination report from 2016. AR 895-96.

On July 26, 2016, Dr. McPhee provided an addendum to his report, acknowledging review of the additional evidence and addressing it in detail. AR 870-75. With respect to the February 10, 2016 nerve conduction studies and EMGs conducted by Dr. Standage, Dr. McPhee noted that "the lumbosacral electrodiagnostic studies showed some electrophysiological changes that were not inconsistent with radiculopathy," but dismissed it because the study "in and of itself is not diagnostic of radiculopathy, with clinical correlation still required." AR 887. Dr. McPhee concluded the same with respect to the January 2016 MRI, stating that the results showed Plaintiff had conditions that "could contribute to radicular symptoms on the left, but clinical correlation is required." AR 887. He further stated: "Clinical correlation should consist of reported symptoms in a nerve root distribution, with provocation and nature of

11

the symptoms consistent with a radiculopathy . . . in addition to exam findings in a nerve root distribution with some consistency of the involved level based on specific sensory exam findings, muscle stretch reflexes and strength on manual muscle testing of multiple muscles innervated by the same nerve roots." AR 887. Dr. McPhee concluded that, although the MRI indicated possible nerve root irritation and the EMG was consistent with radiculopathy, "the file lacks specific clinical correlation of symptoms and specific findings on neurological exam." AR 887. Dr. McPhee recommended that "it may be helpful to obtain an IME with detailed neuromuscular exam to determine if there is clinical correlation for a radiculopathy." AR 888.

On August 1, 2016, Defendant sent a letter to Plaintiff upholding its original adverse determination because "there was a lack of clinical examination findings" to support radiculopathy. AR 860. Defendant did not order an IME as recommended by Dr. McPhee.

On September 2, 2016, Plaintiff filed suit in this Court under 29 U.S.C. § 1132(a)(1)(B).

## LEGAL STANDARD

The court reviews de novo whether the plan administrator correctly or incorrectly denied benefits. Opeta v. Nw. Airlines Pension Plan for Contract Employees, 484 F.3d 1211, 1217 (9th Cir. 2007). In most cases, the court bases its review solely on the evidence in the administrative record. Id. The plaintiff bears the burden of proving that he is entitled to benefits under the Plan. Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294

12

(9th Cir. 2010). "In reviewing the administrative record, the Court evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010).

DISCUSSION

The parties agree that Plaintiff demonstrated that he was disabled as defined by the Plan. The central issue in this case is whether the radiculopathy exemption to the NMS limitation applies.

Plaintiff argues that Defendant bears the burden of establishing the NMS limitation applies; Defendant disagrees. Plaintiff cites a number of out-of-circuit cases in support of his contention that the insurer bears the burden of showing that an exclusion from coverage applies. See Okuno v. Reliance Standard Life Ins. Co., 836 F.3d 600, 609 (6th Cir. 2016) (holding that the insurer "bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case"); Owens v. Rollins, Inc., 2010 WL 3843765, at *2 (E.D. Tenn. Sept. 27, 2010) (holding that the insurer bears the burden of proving the limitation on benefits, which is a coverage exclusion and affirmative defense to coverage); Deal v. Prudential Ins. Co. of Am., 263 F. Supp. 2d 1138, 1143 n.2 (N.D. Ill. 2003) ("The burden of proving that a claim falls within an exclusion rests squarely on the insurer.").

Plaintiff acknowledges Hoffmann v. Life Ins. Co. of N. Am., which addresses facts similar to the present situation. 2014 WL

13

7525482 (C.D. Cal. Dec. 29, 2014), aff'd, 669 F. App'x 399 (9th Cir. 2016). There, the district court held that a two-year mental illness limitation on coverage was not an exclusion from coverage because the insurer was still required to pay benefits for two years. Id. at *5. The claimant, not the insurer, bears the burden of showing that the two-year mental illness limitation does not apply. Id. The Ninth Circuit affirmed the decision, stating that the "district court did not err in placing the burden on [the claimant] to show that he has Bipolar II," an "exemption" from the mental illness limitation. Hoffmann v. Life Ins. Co. of N. Am., 669 F. App'x 399, 400 (9th Cir. 2016). The Ninth Circuit further explained that, even if the two-year limitation was an exclusion, the insurer "met that burden by demonstrating that [the claimant] is disabled due to a mental illness." Id. "The real issue is whether [the claimant] has a kind of mental illness--Bipolar II-- that is exempted from the policy's limitation provision." Id. The Ninth Circuit concluded that the plaintiff had the burden to prove he was exempted from the limitation, "just as he would have the burden to prove his eligibility for coverage." Id. See also Aeroquip Corp. v. Aetna Cas. & Sur. Co., 26 F.3d 893, 894–95 (9th Cir. 1994) (noting that, "although courts are split on this issue, the majority of decisions place the burden on the insured" to prove that an exception to the insurance policy exclusion applies).

Here, Plaintiff similarly seeks to prove that an exemption to a limitation on coverage applies. Plaintiff does not dispute that his disability is a neuromuscular, musculoskeletal, or soft tissue disorder that falls within the purview of the NMS

14

limitation. Instead, Plaintiff argues that he has radiculopathy, which is an exemption to the NMS limitation. Thus, the Court follows the reasoning of Hoffman and holds that Plaintiff bears the burden of showing he has radiculopathy, an exemption to the NMS limitation, just as he would bear the burden of proving that he is eligible for coverage.

Thus, the Court considers whether Plaintiff has shown by a preponderance of the evidence that the radiculopathy exemption applied at the time that his benefits ended due to the NMS limitation, that is, on September 6, 2015. Muniz, 623 F.3d at 1295. The policy requires "objective evidence" of radiculopathy, which is defined as a "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology." AR 50-51.

Plaintiff asserts that he has presented objective evidence of radiculopathy, including: (1) the two EMGs conducted by Dr. Standage, dated November 23, 2013 and February 10, 2016, which show lumbar radiculopathy that has progressed from the right side at L5 in 2013 to both lower extremities in 2016, (2) the March 1, 2016 MRI, which shows mild to moderate canal stenosis and moderate to severe left neural foraminal narrowing, and (3) Dr. Reynold's March 14, 2016 report, which reported the results of clinical examination (such as a positive straight leg test bilaterally and decreased sensation light touch and pinprick to Plaintiff's left upper extremity and right lower extremity) and various diagnostic tests, and diagnosed lumbar radiculopathy. In addition, Plaintiff contends that various other physicians' clinical findings support the objective evidence. From 2013

15

through 2016, several medical professionals conducted clinical examinations and reviewed diagnostic tests of Plaintiff's condition and diagnosed him with radiculopathy. See, e.g., AR 2380 (Dr. Hammon); AR 2563 (PA Aulakh); AR 1867-1881 (Dr. Standage); AR 2887 (Dr. Renbaum); AR 2078-2083 (Dr. Mitchell). The Court finds particularly persuasive Dr. Reynold's March 14, 2016 report, which is reasonably close in time to the date Plaintiff's benefits terminated, suggesting he had radiculopathy at that time. See Fontana v. Guardian Life Ins., 2009 WL 73743, at *4 (N.D. Cal. Jan. 12, 2009) (citing Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)) (holding that "reports containing observations made after the period for disability are relevant to assess the claimant's disability.").

Defendant points to some contrary evidence in the record, such as Dr. Sun's report that Plaintiff did not exhibit radiculopathy as well as Dr. McPhee's and Dr. Madireddi's medical opinions. On balance, this evidence does not outweigh the ample evidence described above. Moreover, Dr. McPhee's opinion originally did not consider the objective evidence submitted by Plaintiff. After it was pointed out to Dr. McPhee that he did not consider the evidence, he issued revised findings which came to the same conclusion as before. Dr. McPhee's addendum appears suspect, especially considering he acknowledged that Plaintiff's MRI and EMG tests were not inconsistent with radiculopathy, but nevertheless dismissed the test results as not the best evidence of the disease. Dr. McPhee did so despite the fact that he has stated previously that "[n]eedle electromyography [EMG] is the single most useful procedure diagnostically in cases of suspected

16

1  radiculopathy." Brien v. Metro. Life Ins. Co., 2012 WL 4370677,
2  at *8 (D. Mass. Sept. 21, 2012).  Thus, the Court does not find
3  Dr. McPhee's opinion to be persuasive.  As for Dr. Madireddi, the
4  Court affords limited weight to her opinion because she conducted
5  a paper review and did not conduct any clinical examination of
6  Plaintiff.  Dr. Madireddi also provided an addendum to her report
7  without providing any additional analysis, calling her
8  conclusions into question.

9  Defendant responds that the evidence presented by Plaintiff
10 is not "objective clinical evidence."  Defendant does not point
11 to anything in the Plan defining clinical evidence, or explain
12 why Plaintiff's evidence does not qualify as such.  Without any
13 guidance on this point, the Court declines to reject Plaintiff's
14 evidence on this basis.

15 Defendant also contends that the clinical findings proffered
16 by Plaintiff were from long before and long after September 6,
17 2015, and thus do not support an inference that Plaintiff had
18 radiculopathy when Defendant terminated Plaintiff's benefits.
19 Defendant submits no evidence showing that Plaintiff's
20 radiculopathy could disappear and reappear within a matter of
21 months.  Absent such evidence, the Court finds that Plaintiff has
22 shown that it is more likely than not that Plaintiff had
23 radiculopathy when his benefits were terminated.

CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for judgment (Docket No. 33) and DENIES Defendant's cross-motion for judgment (Docket No. 34).  Plaintiff's claim for long-term disability benefits shall be reinstated.  Plaintiff is

entitled to an award of long-term disability benefits from September 6, 2015 through the entry of judgment, plus pre-judgment interest.

Defendant shall calculate the amount of past benefits and interest due in the first instance and the parties shall file a stipulated form of judgment within fourteen days of the Court's Order, unless a dispute concerning the amount due arises and cannot be resolved without Court intervention, in which case the parties shall each file a proposed form of judgment and a brief not exceeding two pages explaining why their calculation of the amount due is correct.

Plaintiff may file a motion for attorneys' fees and costs within fourteen days of entry of judgment. See 29 U.S.C. § 1132(g)(1). Pursuant to Civil Local Rule 54-5, the parties must meet and confer for the purpose of resolving all disputed issues relating to attorneys' fees before Plaintiff files his motion.

IT IS SO ORDERED.

Dated: May 1, 2018

CLAUDIA WILKEN
United States District Judge

18